Luis M. Morera y José Ramírez Martín, peticionarios, *v.* F. Navarro Ortiz, Juez de la Corte de Distrito de Mayagüez, demandado.

Núm. 1282.—*Sometido:* Marzo 24, 1942. *Resuelto:* Marzo 27, 1942.

*Mariano H. Ramírez,* abogado de los peticionarios; *Miguel A. García Méndez y Carlos García Méndez,* abogados del interventor, demandante en el pleito principal.

Eﾫ Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Luis M. Morera y José Ramírez Martín comparecieron por medio de abogado ante esta Corte Suprema en marzo 18, 1942, pidiéndole que expidiera un auto inhibitorio dirigido al Juez de Distrito de Mayagüez ordenándole que se abstuviera de continuar asumiendo jurisdicción sobre cierto procedimiento de *injunction* posesorio de que estaba conociendo, o en su defecto que expidiera un *certiorari* reclamando los autos del injunction y los revisara a los fines de anular ciertas órdenes dictadas en el mismo.

Estudiada la solicitud, se ordenó la expedición del certiorari, señalándose para la vista el 24 de marzo actual. El pleito original fué remitido y en el día señalado se celebró la vista. Comparecieron los peticionarios por su abogado y Enrique Pérez Olivencia, demandante en el injunction, por el suyo, archivando además una oposición por escrito.

Muestran los autos originales que el 5 de marzo de 1942 Enrique Pérez Olivencia archivó en la Corte de Distrito de Mayagüez una demanda de injunction posesorio contra Ramón Rivera, Benigno González y José Ramírez Martí, alegando ser dueño de una parcela de terreno de 23 cuerdas en el barrio Bateyes de Mayagüez que describe; que dicha parcela está "enclavada entre otras ajenas y sin otra salida accesible al camino público que no sea la constituída por un camino trazado y en constante uso desde tiempo inmemorial atravesando dos pequeñas parcelas, hoy de los parceleros señores Ramón Rivera y Benigno Gònzález''; que dentro del año inmediatamente anterior, o sea hasta diciembre, 1941 estuvo en la posesión y uso del camino habiendo sacado por él la cosecha de cañas y otros productos de su finca hasta que el tránsito fué interceptado poniéndose una cerca de alambre sin su consentimiento y contra su voluntad; que el otro demandado José Ramírez Martín ayudó en la intercepción del camino y ha hecho manifestaciones de que continuará impidiendo el tránsito por el mismo; que de no restituírsele en

la posesión y uso del camino se le causarán los daños irreparables que describe y que no tiene otro remedio rápido, eficaz y adecuado que el de injunction que ejercita. Suplicó la expedición del auto y, además, dada la urgencia del caso, la de uno preliminar mediante fianza.

El mismo día de presentada la demanda la corte señaló la vista del juicio para el veinte de marzo y ordenó la expedición del injunction preliminar mediante fianza de $500, que fué en el acto prestada. El injunction preliminar fué al efecto de que los demandados no sólo no continuaran obstruyendo el uso del camino por el demandante, si que quitaran las cercas puestas por ellos en el mismo.

Emplazados los demandados el seis de marzo, presentaron una moción jurada el diez "solicitando que se deje sin efecto la orden de entredicho." La corte señaló el mismo día la vista de la moción para marzo trece. Los motivos alegados para la solicitud fueron, en resumen, los que siguen:

Que el demandante no pidió en su demanda la orden de entredicho; que la orden se refiere a un camino hasta salir a la carretera cuando el descrito en la demanda sólo atraviesa dos parcelas y no llega a la carretera; que la demanda no alega hechos suficientes determinantes de causa de acción; que ninguno de los demandados tiene control, dominio ni posesión del camino, siendo éste propiedad del Gobierno de los Estados Unidos actuando a través de su agencia la P.R.R.A.; que dicho camino es parte del construído por los Estados Unidos por medio de la P.R.R.A. en la finca "Marini," propiedad de los Estados Unidos, de 141 cuerdas que se describe, y que si bien el demandado José Ramírez como Administrador de Hogares de la finca tuvo bajo su custodia y control el camino hasta marzo 7, 1942, otra persona ha sido designada para sustituirlo; que bajo tales condiciones es imposible a los demandados acatar y obedecer la orden de entredicho en el sentido de quitar la cerca que impide el paso del demandante; que si bien es cierto que para la zafra de 1940–41 hasta mayo, el demandante usó el camino para transportar sus cañas, lo

fué mediante permiso de los Estados Unidos por la P.R.R.A., habiendo vencido el término por el cual se concediera; y que de acuerdo con lo expuesto, la parte realmente interesada y afectada lo es los Estados Unidos que no pueden ser demandados sin su consentimiento.

El once de marzo el demandante pidió a la corte que ordenara la citación del demandado Ramírez para que mostrara causa por qué no debía ser castigado por desacato, alegando que dicho demandado se negó a quitar la cerca y manifestó en presencia del submárshal que no permitiría el paso y que estando ya cortadas cañas, hecho que le constaba a Ramírez, abrió éste una zanja por el centro del camino con el deliberado propósito de impedir el paso. La corte dictó la orden que se le pedía señalando la comparecencia para el doce de marzo.

El demandado Ramírez contestó la moción. Negó las aseveraciones del demandante y explicó lo que según él había sucedido. Siguen dos cartas del Administrador de la P.R.R.A. de marzo 9, una dirigida a Ramírez relevándolo de sus deberes en relación con el camino y otra a Luis M. Morera para que se hiciera cargo del mismo como coordinador de la finca Marini.

Los autos terminan con dos resoluciones de la corte. La primera fechada en marzo 13, puso término al incidente de desacato, así:

"Por todo lo cual, resolvemos eximir al demandado, José Ramírez Martín, de la imposición de castigo mediante multa o cárcel . . . ., apercibiendo a dicho demandado, al igual que a los demás, Ramón Rivera y Benigno González, y a su relacionado, Luis Morera, al cual se hace extensiva la orden en razón a su propia declaración jurada ante esta corte, para que se abstengan inmediatamente, por sí o por medio de abogados, agentes, representantes, obreros, empleados o jefes, familiares o subalternos, o a cualquiera otra persona bajo su mando o con ellos relacionada a intervenir en la libre posesión y disfrute por parte del demandante del camino a que se refiere su demanda para sacar sus cañas y productos desde su finca hasta el camino o carretera pública por la que ha de transportarlos para su elaboración

o venta en evitación de pérdidas, y especialmente para que procedan inmediatamente a cerrar la zanja a que se refiere la moción sobre desacato y que obstruye actualmente el paso por dicho camino, advirtiéndoles esta corte que será inflexible, castigando por desacato, si se incumpliere esta orden, ordenando asimismo al márshal de esta corte que proceda a verificar el cierre de dicha zanja en la mañana del día de mañana, utilizando los obreros necesarios al objeto, si durante el día de hoy no fuere hecho por los aquí apercibidos de su deber de hacerlo, trayendo mañana mismo información a esta corte de lo actuado para las demás providencias que fueren pertinentes.''

· La segunda, de marzo 14, resuelve la moción de marzo 10 de los demandados, como sigue:

''En el acto de la vista los demandados trataron de presentar prueba de títulos de la finca atravesada por el camino origen de este litigio, a lo que se negó la corte, por entender que en esta clase de acciones no procede en forma alguna alegación ni prueba referente a título de finca, sino que lo que se investiga y resuelve en esta clase de litigios es únicamente la posesión alegada por el demandante del referido camino en el año inmediatamente anterior a la radicación de la demanda.

''Quedó la cuestión sometida a la corte para resolución, que procedemos a dictar en el día de hoy para su constancia en los autos.

''Estima la corte que de acuerdo con la sección 3 de la Ley de Injunction, aprobada por la Asamblea Legislativa de Puerto Rico el día 8 de marzo de 1906, esta corte tiene jurisdicción para conocer del recurso original en su fondo y asimismo para librar el injunctiou *pendente lite* auxiliar u orden de entredicho que le fué solicitada por el demandante, mediante fianza que éste prestó para garantizar a los demandados cualquier perjuicio que éstos pudieran tener o sufrir, si se resolviera en su día que el demandante no tiene derecho a la posesión y uso del camino que reclama en su petición.

''Por todo lo cual, se declara sin lugar la moción de los demandados para que se anule y deje sin efecto el *injunction pendente lite* u orden de entredicho, la cual quedará subsistente en todo su efecto y valor legal hasta que se resuelva el caso principal en su fondo, señalado ya para el día 20 del corriente mes, todo ello sin especial condena de costas.''

Aparte de las dos cartas del Administrador de la P.R.R.A. que dejamos mencionadas, la prueba que se practicara y la

evidencia ofrecida y no admitida no forman parte de los autos del injunction ni se han sometido en forma alguna a esta corte por los peticionarios.

El certiorari se pidió a fin de que esta corte revisara y anulara las resoluciones de marzo 13 y 14 por el fundamento de que la corte de distrito actuó sin jurisdicción por resultar de las alegaciones de los demandados que la parte realmente afectada por el procedimiento lo serían los Estados Unidos de América que no pueden ser demandados sin su consentimiento, y por el de haberse hecho el auto extensivo a Luis M. Morera, un testigo, siendo dicho Morera un agente y empleado de los Estados Unidos.

Tras un estudio de todas las cuestiones envueltas, opinamos que el auto expedido debe anularse.

██ Es cierto que bajo las circunstancias que en el caso concurren impresiona en contra de su legalidad o al menos de su corrección la práctica seguida por la corte de distrito expidiendo el auto preliminar de injunction sin oír a los demandados, pero el recurso extraordinario de certiorari no es el procedente para resolver la cuestión, ya que no puede sostenerse que la corte careciera por completo de autoridad para actuar en la forma en que lo hizo—*Echevarría Viuda de Subirá* v. *Saurí,* 38 D.P.R. 737, 744, *Compañía Popular* v. *Suárez,* 52 D.P.R. 250—y la orden que dictó es apelable, constituyendo la apelación, dado lo breve del récord y el carácter mandatorio de la orden, un recurso rápido y eficaz en el curso ordinario de la ley.

██ En cuanto al hecho de haberse extendido el injunction a un testigo, Luis Morera, bastará decir que la corte sentenciadora explica en su resolución que lo fué por aparecer de su declaración jurada que era un *relacionado* que con la orden intervino, sin que se haya elevado a esta corte la declaración.

██ Y por último y yendo a la cuestión jurisdiccional suscitada, no podemos convenir con los peticionarios en su contención de que la corte de distrito actuara sin jurisdicción en el pleito.

Se trata de recobrar el uso de un camino de que alega el demandante que estaba en posesión dentro del año anterior a la fecha de la interposición de la demanda y de cuyo disfrute lo privaron los demandados a virtud de los actos por ellos realizados.

El camino pasa por dentro de parcelas de terreno en posesión de dos de los demandados, Ramón Rivera y Benigno González, y admitiendo que las parcelas pertenezcan a los Estados Unidos y estén bajo el control de la Puerto Rico Reconstruction Administration (P.R.R.A.) y que el otro demandado José Ramírez Martín y el peticionario Luis M. Morera tuvieran, como agentes de la P.R.R.A., bajo su custodia el camino, aun así, no tendría que concluirse que fuera necesario demandar directamente a los Estados Unidos para que la corte adquiriera jurisdicción para ver y fallar el asunto.

Para sostener esa conclusión será suficiente que citemos del caso de *Baldrich* v. *Barbour*, 90 F. (2d) 867, 868 y 869, lo que sigue:

"Versa este caso sobre una acción incoada en la Corte de Distrito de los Estados Unidos para Puerto Rico para recobrar y retener la posesión de determinadas tierras situadas en Puerto Rico. Los demandantes originales en el pleito y ciertos 'demandantes interventores', alegaron en su demanda que ellos son los dueños en pleno dominio de alrededor de 6,000 acres de terreno situados en el Distrito Municipal de Río Grande, Naguabo, Fajardo y Luquillo, describiéndolos por sus colindancias . . .

" * * * * * * *

"El demandado, en su carácter de Superintendente de Bosques, reclama el derecho de posesión sobre todas las tierras incluídas en la 'Luquillo Forest Reserve', las que incluyen los terrenos reclamados por los demandantes en esta acción; que dichas tierras han estado ocupadas y han sido poseídas por sus antecesores en el cargo desde 1903; y los demandantes admiten que los terrenos descritos en la demanda han estado en la exclusiva posesión de los Superintendentes del 'Forest Reserve' desde 1913.

"(1) Es evidente que no es ésta una acción para establecer el dominio sobre las tierras. Si así fuese, los Estados Unidos deberían haber sido incluídos como parte, y esto no podía hacerse sin su con-

sentimiento. *United States* v. *Lee,* 106 U. S. 196, 1 S. Ct. 240, 27 L. Ed. 171; y en este caso, que llegó ante esta corte mediante excepción previa, 71 F. (2d) 9, se resolvió que se trataba de una acción para recobrar la posesión solamente y aunque el demandado debe demostrar que los Estados Unidos tenían autoridad para sostener su derecho de posesión, el pleito no era uno para establecer el dominio sobre los terrenos descritos.''

*Debe anularse el auto expedido y devolverse el pleito a la corte de su origen para que continúe conociendo del mismo de acuerdo con la ley.*